RON E. SHULMAN, State Bar No. 178263
rshulman@wsgr.com
THOMAS T. CARMACK, State Bar No. 229324
tcarmack@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

ROGER J. CHIN, State Bar No. 184662
rchin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105-1125
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Attorneys for
GREGORY KIRK and
AFFYMETRIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ILLUMINA, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AFFYMETRIX, INC.,<br><br>　　　　Defendant. | CASE NO. 10-mc-80226 CRB (BZ)<br><br>**OPPOSITION TO ILLUMINA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM GREGORY KIRK**<br><br>Judge:　　Honorable Bernard Zimmerman<br><br>Date:　　　November 3, 2010<br>Time:　　　10:00 a.m.<br>Location:　Courtroom G, 15th Floor |

OPPOSITION TO MOTION TO COMPEL
CASE NO. 10-MC-80226 CRB (BZ)

**STATEMENT OF ISSUES**

1. Whether Dr. Gregory Kirk must produce documents reflecting attorney work product, even though the litigation consulting agreement pursuant to which they were shared was in effect at the time of their creation.

2. Whether the mere fact that Dr. Kirk is both a litigation consultant pursuant to Federal Rule of Civil Procedure 26(b)(3) and a fact witness creates a waiver of work product protection.

**BRIEF IN OPPOSITION**

**I.    INTRODUCTION**

Illumina presents two arguments in its attempt to obtain documents containing attorney work product materials from Dr. Gregory Kirk, a third party litigation consultant to Affymetrix in connection with pending patent litigation in Wisconsin. Illumina's arguments lack merit.

First, Illumina argues that no work product protection can attach to documents created while Dr. Kirk was separately negotiating a license agreement with Affymetrix, because his consulting agreement allegedly terminated or because he retained legal counsel for the license negotiation. Illumina is simply mistaken that Dr. Kirk's consulting agreement terminated— no notice of termination has ever been provided. By asserting work product immunity in response to the subpoena, Dr. Kirk agrees that the documents Illumina now seeks are subject to the consulting agreement. Furthermore, Illumina provides no support whatsoever for the proposition that Dr. Kirk's hiring of legal counsel for a separate licensing transaction waives attorney work product immunity for documents related to his litigation consulting.

Second, Illumina argues that attorney work product protection is waived because a litigation consultant may not serve as a fact witness. Again, Illumina's argument is without support because its own cited cases confirm that work product protection is not waived simply because the individual serves as a fact witness in the same case. This "two hats" or "multiple hats" doctrine is well established and makes clear that a witness' dual status cannot effect a waiver of work product protection unless the party retaining the consultant relies on withheld

work product through the witness' testimony. Illumina provides no basis to invoke an exception to that doctrine.

For these reasons, Illumina's motion to compel production of documents from Dr. Kirk's privilege log should be denied.

## II. BACKGROUND FACTS

### A. Dr. Kirk's Omitted Inventorship

The two patents asserted by Illumina in the Wisconsin patent case relate to a parallel processing format for performing genetic tests (the "Asserted Patents"). Carmack Ex. A[1] ¶¶ 35-36. They claim improvements to technology developed at Tufts University that Illumina licensed in April 1998. *Id*. at ¶¶ 35-38. In December 1998, Illumina then filed a provisional patent application directed to these improvements, which ultimately resulted in the Asserted Patents. *Id*. ¶ 50. The claimed improvement was conceived by Dr. Kirk and disclosed in writing to the named inventor, Dr. John Stuelpnagel, approximately nine months before Illumina filed this provisional application. *Id.* ¶¶ 41-42.

Around this time, Dr. Stuelpnagel, one of Illumina's founders, had been trying to recruit Dr. Kirk to join his fledgling company. Carmack Ex. A ¶ 39. As part of that effort, he arranged for Dr. Kirk to visit Tufts to view and solicit his feedback on the technology. *Id*. ¶¶ 39-40. On March 9, 1998, a few days after his visit to Tufts, Dr. Kirk provided his feedback in the form of a detailed email sent to Dr. Stuelpnagel. In the email, Dr. Kirk expressed his enthusiasm for the Tufts technology and provided some suggestions for improvements, including the very genetic testing format that Dr. Stuelpnagel later claimed in Asserted Patents. *Id*. ¶¶ 41-42. Illumina never obtained rights to these ideas, because Dr. Kirk ultimately decided to turn down a job offer from Dr. Stuelpnagel to join the company. *Id*. ¶ 47.

---

[1] "Carmack Ex. __" refers to the corresponding exhibit from the Declaration of Thomas T. Carmack in Support of Opposition to Illumina's Motion to Compel Production of Documents From Gregory Kirk ("Carmack Decl."), filed herewith.

OPPOSITION TO MOTION TO COMPEL -2-
CASE NO. 10-MC-80226 CRB (BZ)

Recognizing that Illumina did not own Dr. Kirk's conception set forth in the March 9, 1998 email, Dr. Stuelpnagel confected a story that he came up with the parallel processing idea on his own, in the summer of 1998. *Id.* ¶ 48. Perhaps not coincidentally, Dr. Stuelpnagel did not retain a copy of Dr. Kirk's earlier email. Carmack Ex. B at 214:14-16. Dr. Kirk was not named as an inventor of the Asserted Patents, despite the fact that—as Dr. Stuelpnagel admitted at his deposition earlier this year—Dr. Kirk's email is "very similar" to the independent claims of the Asserted Patents. Carmack Ex. A ¶¶ 50, 56-57.

In the Wisconsin litigation, Affymetrix has asserted that the Asserted Patents are invalid and unenforceable due to the inventorship defect. Carmack Exs. A and C. These defenses rely entirely on evidence regarding the events surrounding Dr. Kirk's inventorship in 1998.

**B.     Dr. Kirk's Litigation Consulting for Affymetrix**

Shortly after the Wisconsin litigation was commenced by Illumina in 2009, Affymetrix retained Dr. Kirk as a litigation consultant. Bibby Ex. E.[2] However, Affymetrix did not offer him as a testifying expert, and Dr. Kirk did not submit an expert report in the Wisconsin litigation.[3] Therefore, Dr. Kirk was an expert employed only for trial preparation purposes within the meaning of Federal Rule of Civil Procedure 26(b)(4)(B).

**C.     The License Agreement**

When Affymetrix learned that Dr. Kirk held rights to the Asserted Patents, the two parties began to negotiate a license to Dr. Kirk's intellectual property rights. This negotiation was separate from the litigation consulting agreement, and did not commence until after Dr. Kirk had already begun his work for Affymetrix as a litigation consultant. Carmack Ex. D at 14:10-18.

Dr. Kirk and Affymetrix entered a license agreement on February 8, 2010. Bibby Ex. C. Illumina misleadingly asserts that "Kirk granted Affymetrix his potential ownership interest in the patents at issue." Mot. 2. In fact, as documented in the agreement itself, Dr. Kirk did not

---

[2] "Bibby Ex. __" refers to the corresponding exhibit from the Declaration of Gina A. Bibby in Support of Illumina's Motion to Compel Production of Documents Withheld by Gregory Kirk.

[3] The deadlines for liability expert reports in the Wisconsin litigation have already passed.

convey any ownership interest to Affymetrix, and Affymetrix's license rights from Dr. Kirk are non-exclusive. Bibby Ex. C § 2.1.

### D. Illumina's Subpoena to Dr. Kirk

Dr. Kirk is not a party to the Wisconsin litigation. Illumina subpoenaed him earlier this year and he was deposed on August 19, 2010. Carmack Ex. D.

Illumina's subpoena to Dr. Kirk is broad. Among other things, it requests "all documents related to" his ideas and inventions in the relevant time period, the Asserted Patents, and the litigation between Illumina and Affymetrix. Bibby Ex. A. In response, Dr. Kirk produced or identified in a privilege log the following five general categories of documents: (1) emails and other documents from the 1998 time frame relevant to his inventorship; (2) communications he had with Affymetrix before his consulting agreement, dating back to 2006; (3) a small number of documents containing attorney work product generated as part of his litigation consulting for Affymetrix; (4) documents relating to his negotiation of the license agreement with Affymetrix; and (5) communications with his counsel that are protected by the attorney-client privilege. Bibby Ex. B. In total, Dr. Kirk produced 3,355 pages of documents from his personal files, and he identified 250 documents on his privilege log. Bibby Ex. B; Chin Decl. ¶ 2 (Docket No. 10).

Illumina has been allowed to take unfettered discovery of non-privileged information, including Dr. Kirk's license-related documents and testimony that overlapped the period of time covered by the consulting agreement. *See, e.g.*, Carmack Ex. D at 14:22-16:12; Bibby Ex. B. The present dispute only concerns some of the attorney-work product documents in category (3) above that relate to Dr. Kirk's litigation consulting for Affymetrix.

## III. ARGUMENT

### A. The Obligations Under the Consulting Agreement Remain in Effect

In its first argument, Illumina does not dispute that work product shared with or generated by Dr. Kirk during his time as a litigation consultant is entitled to protection under Federal Rule of Civil Procedure 26(b)(3). Mot. 4. However, Illumina alleges that protection ended when either (A) Dr. Kirk's consulting agreement terminated, or (B) he retained separate counsel to negotiate the license to his inventions with Affymetrix. Both assertions are wrong.

OPPOSITION TO MOTION TO COMPEL  -4-
CASE NO. 10-MC-80226 CRB (BZ)

1    Illumina is incorrect that Dr. Kirk's consulting agreement terminated. The September 10,
2 2009 consulting agreement does not specify a fixed term. Bibby Ex. E. Therefore, under
3 applicable California law, the agreement may only be terminated upon providing reasonable
4 notice to the other party. *Consol. Theatres, Inc. v. Theatrical Stage Emps. Union Local 16*, 447
5 P.2d 325, 335 (Cal. 1968); *Varni Bros. Corp. v. Wine World, Inc.*, 41 Cal. Rptr. 2d 740, 746
6 (Cal. Ct. App. 1995). Any such notice to terminate "must be clear and explicit." *City of El
7 Cajon v. El Cajon Police Officers' Ass'n*, 56 Cal. Rptr. 2d 723, 729 (Cal. Ct. App. 1996).
8 Neither Kirk nor Affymetrix has provided any such notice to terminate or acted in any way as if
9 the agreement was terminated.[4] Wells Decl. ¶ 4. Therefore, the parties' obligations under the
10 consulting agreement are still in effect, as a matter of law. Affymetrix shared and solicited the
11 work product reflected in the documents at issue based on and pursuant to Dr. Kirk's role as a
12 litigation consultant for Affymetrix. Wells Decl. ¶ 3.

13    The continuing effect of Dr. Kirk's consulting agreement is supported by Dr. Kirk's and
14 Affymetrix's document production. While withholding documents reflecting protected work
15 product, both Dr. Kirk Affymetrix and have produced other communications and documents
16 exchanged between them that were dated during Dr. Kirk's consultancy but that were not related
17 to Dr. Kirk's consulting. These productions include all documents from the negotiation of the
18 license agreement between Dr. Kirk and Affymetrix. Wells Decl. ¶ 5. Because Dr. Kirk's
19 consulting agreement remains in effect, Illumina's request for specific entries from Dr. Kirk's
20 privilege log must fail.

21    Illumina's cited decisions are not to the contrary.

---

[4] Because Kirk did not terminate the consulting agreement by providing reasonable notice as required by California law, his private subjective belief about the status of the consulting agreement is irrelevant. Furthermore, having received no notice of termination, or any other indication that Dr. Kirk believed the agreement was no longer in effect, Affymetrix reasonably relied upon Dr. Kirk's status as a litigation consultant when it shared attorney work product information with him. Fed. R. Civ. P. 26(b)(3)(A). Dr. Kirk's unilateral actions cannot operate to waive Affymetrix's privileges and immunities. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996).

- *Blum v. Spectrum Rest. Group, Inc.*, No. 4:02-CV-98, 2003 U.S. Dist. LEXIS 2499 (E.D. Tex. Feb. 20, 2003) involved a financial planner who did not qualify as an agent or consultant under Federal Rule of Evidence 26(b)(3). *Id*. at *7. Furthermore, the Court found that no work product attached because the documents at issue were not prepared in anticipation of litigation, unlike the documents here that were prepared after suit began. *Id*.

- In *Kirschbaum v. WRGSB Assocs.*, No. 97-CV-5532, 1998 U.S. Dist. LEXIS 8860 (E.D. Pa. June 18, 1998), the Court found that documents created by the third-party insurer were in fact protected by Rule 26(b)(3), except those relating to entities that were not parties to the lawsuit. *Id*. at *3 ("The Plaintiffs are not entitled to discover documents prepared by Travelers in its capacity as an insurer for the Defendants in this matter, if the documents were prepared in anticipation of litigation.").

- In *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433 (N.D. Cal. 2010), the Court found that the documents in question were not entitled to work product protection solely because they were not generated in anticipation of litigation. *Id*. at 440-41. And, contrary to Illumina's description of this case, there was no third party even involved in the claim of work product protection. *Id*. at 435 (describing "internal audits").

The other basis for Illumina's claim that the documents it seeks are not entitled to work product protection is also without merit. Illumina cites no authority whatsoever for the proposition that Dr. Kirk's hiring of legal counsel for license negotiations requires the production of work product documents shared with him in his capacity as a litigation consultant. Mot. 5. And, there is nothing to suggest that Dr. Kirk cannot operate as a litigation consultant for Affymetrix at the same time he was separately negotiating a license with the company. As discussed below, it is well-recognized that an individual may wear "two hats," thus maintaining status as a litigation consultant entitled to work product protection, and at the same time serve as a fact witness in the case.

**B.     Illumina Has Not Demonstrated a Waiver of Work Product Protection**

Illumina makes the bald assertion that: "Since Kirk is acting as a fact witness, as opposed to an expert witness, in connection with the present litigation, it is improper for Kirk to withhold documents and claim work product immunity toward documents between Affymetrix and Kirk created before the date of the joint defense agreement." Mot. 5-6. This statement is wrong as a matter of law.

As the party asserting waiver, Illumina "has the burden of proving the facts necessary to support the finding." *In re Convergent Technologies Second Half 1984 Securities Litigation*,

1  122 F.R.D. 555, 565 (N.D. Cal.1988) (cited in Mot. 6); *U.S. v. Chevron Corp.*, No. 94-1885
2  SBA, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996). A party does not waive work product
3  protection simply because it retains a litigation consultant who is also a fact witness, or because
4  it identifies the consultant as a potential fact witness. *Synopsys, Inc. v. Ricoh Co., Ltd.*, Docket
5  Nos. 403 in C-03-2289, 540 in C-03-4669, 2006 WL 2458721, at *2 (N.D. Cal. Aug. 22, 2006)
6  ("it is possible for a person to play a dual role in litigation, *i.e.*, serve as a fact witness and as a
7  nontestifying expert."); *Stoll v. Kraft Foods Global, Inc.*, No. 1:09-cv-0364-LJM-DML, 2010
8  WL 2560101, at *2 (S.D. Ind. June 24, 2010) (determining that expert's consulting role was
9  based on matters distinct from his fact testimony, thereby permitting the protection to stand);
10 *B.H. v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 659-60 (N.D. Okla. 2005) (cited in Mot. 6).
11 A waiver does not occur unless the party presenting the witness puts a partial disclosure of work
12 product at issue by using it as a sword in the form of the witness' testimony. *Hernandez v.*
13 *Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010); *Stoll*, 2010 WL 2560101, at *3; *Salzman v.*
14 *Henderson*, No. 2:07-cv-00854, 2009 U.S. Dist. LEXIS 119384, at *6-9 (D. Utah Dec. 22, 2009)
15 (cited in Mot. 6); *Gold Fields*, 239 F.R.D. at 659, 660. Furthermore, an adverse party cannot
16 generate a waiver by compelling testimony from the witness in discovery:

> Reference in compelled testimony or other documents produced in response to discovery should not under ordinary circumstances be held to be a waiver of the protection attached to work product documents. By the same token, witnesses for the excess carriers [the Rule 26(b)(3) party] are not barred from revealing the excess carriers' position in the dispute. They are merely barred from revealing the confidences of plaintiffs' counsel.

21 *Nat'l Union Fire Ins. Co. v. Cont'l Ill. Group*, Nos. 85 C 7080, 85 C 7081, 1987 WL 18933, at
22 *3 (N.D. Ill. Oct. 22, 1987).
23      Here, there is no evidence of waiver. The mere fact of Dr. Kirk's dual status as a
24 litigation consultant and fact witness does not effect a waiver of work product protected by Rule
25 26(b)(3). Illumina has presented no other basis for the wavier than Dr. Kirk's dual role. It was
26 Illumina, not Affymetrix that subpoenaed Dr. Kirk. Bibby Ex. A. Illumina cannot use its own
27 subpoena to manufacture a supposed waiver. *Nat'l Union Fire Ins.*, 1987 WL 18933, at *3.
28

Even so, nothing suggests that Affymetrix is using partial disclosure of withheld work product as a shield. Unlike the cases Illumina cites in which the dual-role witness' consultancy occurred at the same time as the facts at issue,[5] the timing of Dr. Kirk's consulting (2009-2010) does not overlap with the timing of the facts that are relevant to the underlying inventorship dispute (1998). Furthermore, Illumina has been free to take discovery about all aspects of Dr. Kirk's 1998 conception and his license negotiations with Affymetrix. Carmack Ex. D at 14:22-16:12; Wells Decl. ¶ 5. As explained above, Dr. Kirk's relevance as a fact witness centers upon events in 1998 that took place over 10 years before Affymetrix retained him as a litigation consultant. Dr. Kirk did not withhold any documents or information dating to the period related to his invention.[6] Bibby Ex. B.

---

[5] *Kelley v. Microsoft Corp.*, No. 07-cv-475-mjp, 2009 U.S. Dist. LEXIS 8290, at *2-3 (W.D. Wash. Jan. 23, 2009); *Gonzales v. United States*, No. C-08-03189 SBA (EDL), 2010 U.S. Dist. LEXIS 52950, at *2-3, 4 (N.D. Cal. May 4, 2010) (additionally noting that accountant had never been retained as consultant); *Salzman*, 2009 U.S. Dist. LEXIS 119384, at *2-3 (denying motion to compel work product documents); *Gold Fields*, 239 F.R.D. at 656-57 (denying motion to compel work product documents). The remainder of Illumina's cited cases regarding waiver are entirely inapposite. *In re Bank One Secs. Litig.*, 209 F.R.D. 418, 424, 425-26 (N.D. Ill. 2002) granted a motion for production of documents containing work product because the party withholding production had already waived the protection by disclosing the documents to a third party and the documents were not created in anticipation of litigation. Other than its statement of the general rule that underlying facts cannot be withheld as work product, it is completely irrelevant to the present situation. In *Convergent Technologies*, 122 F.R.D. at 564, the Court ruled that purely factual non-party witness statements were nevertheless protected by work product and quashed a subpoena for their production—a holding that falls in Dr. Kirk's favor.

[6] Illumina's claim that counsel for Dr. Kirk prevented him from testifying to underlying facts at his deposition based on claims of work product is both irrelevant and misplaced. First, it is irrelevant because Illumina does not claim that the facts that Dr. Kirk supposedly was prevented from providing at his deposition (presumably related to his invention in 1998) have any relation to the work product documents it now seeks, which were generated in 2009 and 2010. Second, Illumina's argument is misplaced because counsel for Dr. Kirk did not prevent him from providing underlying facts. Dr. Kirk filled nearly 375 pages of deposition transcript and produced all documents in his possession relating to his invention in 1998, while the earliest document in his privilege log is dated in 2006. Carmack Ex. D; Bibby Ex. B. Finally, although underlying factual information may not be withheld, an opposing party is not entitled to that information "in a particular form," *i.e.*, by asking the witness to reveal it as formulated in protected work product. *Convergent Technologies*, 122 F.R.D. at 558; *see also Hydramar, Inc. v. Gen. Dynamic Corp.*, 119 F.R.D. 367, 372 (E.D. Penn. 1988) ("Such inquiry may not, however, include questions that tend to elicit ... the facts to which plaintiff's counsel appeared to attach significance, or any other matter that reveals plaintiff's counsel's mental impressions concerning this case.") (citations omitted).

But, even if there were some evidence that Affymetrix has made or intends to make a partial disclosure of work product in a sword/shield maneuver (and there is not—just Illumina's naked speculation), Illumina's motion would still be premature because Affymetrix has not relied on Dr. Kirk's testimony. Unless and until that happens, Illumina's motion is "merely speculative." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 244 F.R.D. 434, 442 (N.D. Ill. 2007). Thus, at best, Illumina's motion must be dismissed as premature.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully requested that Illumina's Motion to Compel Production of Documents Withheld By Gregory Kirk be DENIED in its entirety.

Respectfully submitted,

Dated: October 8, 2010

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Thomas T. Carmack
       Thomas T. Carmack

Attorneys for
GREGORY KIRK and
AFFYMETRIX, INC.